

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00052-CR

_____

MILTON RODGERS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 35497-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Milton Rodgers' story is tragic. In 1986, Rodgers was in a car accident involving an eighteen-wheeler, from which Rodgers experienced a broken back, multiple surgeries, eight months in bed, and constant pain partially managed with medication. He walks with a cane and has considerable limitations on his physical activities. On top of his physical challenges, Rodgers, at a different time, watched in horror as his brother and nephew drowned and their bodies were recovered, quite understandably resulting in severe emotional stress. Finally, Rodgers is also a diabetic. For pain relief he was taking, under prescription, Morphine, sleeping pills, Hydrocodone, and Carisoprodol (soma). For his diabetes, Rodgers also takes Metformin.

Rodgers was charged with the underlying offense of obtaining a controlled substance by fraud,[1] a third degree felony. The sentence from that offense was community supervision in Gregg County, Texas, which has now been revoked,[2] based on his plea of true.

The revocation arose from events that occurred November 24, 2009, in neighboring Harrison County, Texas, resulting in allegations that Rodgers had operated a motor vehicle while intoxicated,[3] had not obtained written consent to travel to Louisiana, had failed to provide a list of drugs prescribed in writing every ninety days, had failed to pay community supervision fees for

---

[1] Specifically, the record shows that he attempted to obtain additional quantities of Valium, Hydrocodone, and soma through use of a forged prescription.

[2] The trial court sentenced him to five years' confinement.

[3] Rodgers was separately tried for driving under the influence, and the State did not obtain a conviction.

three months in 2010, and had broken the law by possessing and using marihuana. The testimony showed that, on the day in question, Rodgers had gone to a pharmacy in Shreveport, Louisiana, had filled prescriptions for pain relief medications, and had quickly taken them—exceeding his prescribed dosage. Rodgers started driving back home. After a citizen contacted police to tell them of a vehicle driving erratically and when, independently, workers in a Waskom fast-food restaurant called police to report a customer who was unable to hold his food or to walk, officers responded to the restaurant and found Rodgers there. Officers did not offer Rodgers assistance, but instead arrested him after he managed to return to, and get behind the wheel of, his car. At that time, officers noticed in Rodgers' car half-empty pill bottles—one of which also contained half-smoked marihuana joints. Though Rodgers had no aroma of either alcohol or marihuana, he admitted taking the drugs. Rodgers explained that he had stopped at the restaurant because he was having a diabetic crash and was attempting to get a sugary drink to rebalance his system. He also testified that he had smoked the marihuana, but that it was several days earlier.

On appeal, Rodgers contends that the judgment should be reversed because the trial court did not consider the full range of punishment and because his sentence is disproportionate to the crime. Rodgers was sentenced to five years' incarceration, which lies in the middle of the two-to-ten year range for a third degree felony conviction. We affirm the trial court's judgment, because (1) the record reveals neither the preservation of any error in failing to consider the full range of punishment, nor any such failure, and (2) Rodgers' sentence is not grossly

3

disproportionate.

*(1)  The Record Reveals Neither the Preservation of any Error in Failing to Consider the Full Range of Punishment nor any Such Failure*

The Constitutional mandate of due process requires a neutral and detached judicial officer who will consider the full range of punishment and mitigating evidence. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786–87 (1973). A trial court denies due process when it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider mitigating evidence and imposes a predetermined punishment. *Ex parte Brown*, 158 S.W.3d 449, 454 (Tex. Crim. App. 2005). In the absence of a clear showing to the contrary, we presume that the trial court was neutral and detached. *Fielding v. State*, 719 S.W.2d 361, 366 (Tex. App.—Dallas 1986, pet. ref'd) (citing *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. [Panel Op.] 1982)).

Rodgers contends that the trial court refused to consider the full range of punishment—thus violating his due process rights in failing to give adequate consideration to the series of tragic events set out above—and that the court should have given them some weight and attempted to match the punishment to the crime. Such a complaint is not preserved for review unless a timely objection is raised. *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd); *Washington v. State*, 71 S.W.3d 498, 499 (Tex. App.—Tyler 2002, no pet.); *Cole v. State*, 757 S.W.2d 864, 865 (Tex. App.—Texarkana 1988, pet. ref'd). No objection was made to the court's ruling; thus, the complaint was not preserved.

Even if we could properly reach this issue, the record does not show that the trial court did

not consider the entire range of punishment other than the fact, standing alone, that the court assessed a punishment in the middle of the applicable range against Rodgers, an individual with no criminal history and in light of the tragic situation set out above. That is insufficient to provide a clear showing that the trial court was not neutral and detached in this instance.

*(2)     Rodgers' Sentence Is Not Grossly Disproportionate*

Rodgers also argues that the sentence is constitutionally disproportionate[4] to the crimes, citing *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Solem v. Helm*, 463 U.S. 277 (1983). We disagree.

Texas courts have traditionally held that, as long as the punishment assessed is within the range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. *See*, *e.g.*, *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Rodgers' five-year sentence falls within the applicable range of "imprisonment . . . for any term of not more than 10 years or less than 2 years" for a third degree felony. *See* TEX. PENAL CODE ANN. § 12.34(b) (West 2011).

That does not end the inquiry. A prohibition against grossly disproportionate punishment

---

[4]To preserve such a complaint for appellate review, Rodgers must have presented to the trial court a timely request, objection, or motion that stated the specific grounds for the desired ruling, or the complaint must be apparent from the context. *See* TEX. R. APP. P. 33.1(a)(1); *Harrison v. State*, 187 S.W.3d 429, 433 (Tex. Crim. App. 2005); *Williams v. State*, 191 S.W.3d 242, 262 (Tex. App.—Austin 2006, no pet.) (claims of cruel and unusual punishment must be presented in timely manner); *Nicholas v. State*, 56 S.W.3d 760, 768 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (failure to complain to trial court that sentences were cruel and unusual waived claim or error for appellate review). While no relevant request, objection, or motion was made before judgment, Rodgers' motion for new trial sets out such a complaint, and this Court has held that to be an appropriate way to preserve this type of claim for review. *See* *Williamson v. State*, 175 S.W.3d 522, 523–24 (Tex. App.—Texarkana 2005, no pet.); *Delacruz v. State*, 167 S.W.3d 904 (Tex. App.—Texarkana 2005, no pet.).

survives under the Eighth Amendment to the United States Constitution apart from any consideration of whether the punishment assessed is within the range established by the Legislature. U.S. CONST. amend. VIII; *see Harmelin*, 501 U.S. 957; *Solem*, 463 U.S. at 290; *Jackson v. State*, 989 S.W.2d 842, 846 (Tex. App.—Texarkana 1999, pet. ref'd); *Lackey v. State*, 881 S.W.2d 418, 420–21 (Tex. App.—Dallas 1994, pet. ref'd); *see also Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (describing this principle as involving a "very limited, 'exceedingly rare,' and somewhat amorphous" review).

*Solem* had suggested, as a three-part test, that an appellate court consider (1) the gravity of the offense compared with the harshness of the penalty, (2) the sentences imposed for similar crimes in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *See Solem*, 463 U.S. at 292. *Harmelin* at least raised questions about the viability of the *Solem* three-part test. In fact, it was subsequently held that proportionality survived *Harmelin*, but that the *Solem* three-part test did not. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *Lackey*, 881 S.W.2d at 420–21. In light of *Harmelin*, the test has been reformulated as an initial threshold comparison of the gravity of the offense with the severity of the sentence; and then, only if that initial comparison created an inference that the sentence was grossly disproportionate to the offense should there be a consideration of the other two *Solem* factors—sentences for similar crimes in the same jurisdiction and sentences for the same crime in other jurisdictions. *McGruder*, 954 F.2d at 316; *Mullins v. State*, 208 S.W.3d 469, 470 (Tex.

6

App.—Texarkana 2006, no pet.); *Lackey*, 881 S.W.2d at 420–21.

The gravity of Rodgers' offense may very well lie on the lesser end of the scale. There is, however, no evidence in this record with which we can compare Rodgers' sentence to the sentences imposed on other persons in Texas or on persons in other jurisdictions who committed a similar offense. *See Latham v. State*, 20 S.W.3d 63, 69 (Tex. App.—Texarkana 2000, pet. ref'd); *Davis v. State*, 905 S.W.2d 655, 664–65 (Tex. App.—Texarkana 1995, pet. ref'd).

This is an unusual situation, and it is unlikely that sentences could be found for many truly comparable defendants. Under the controlling caselaw, however, without evidence of sentences assessed against defendants who had committed similar offenses, the record before us does not support Rodgers' claim. *Cf. Jackson*, 989 S.W.2d at 846 ("[T]here is no evidence in the record reflecting sentences imposed for similar offenses on criminals in Texas or other jurisdictions by which to make a comparison.").

We overrule the contentions of error and affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:      October 19, 2011
Date Decided:        October 20, 2011

Do Not Publish

7